IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY WYROCK, | ) | CASE NO. 1:19-CV-1052 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Mary Wyrock ("Wyrock") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 15.

For the reasons explained below, the Commissioner's decision is **AFFIRMED**.

## I. Procedural History

Wyrock filed her applications for DIB and SSI in October 2017, alleging a disability onset date of April 2014. Tr. 15. After denials by the state agency initially (Tr. 151, 152) and on reconsideration (Tr. 189, 190), Wyrock requested an administrative hearing (Tr. 211). A hearing was held before an Administrative Law Judge ("ALJ") on October 4, 2018, in which a Vocational Expert ("VE") testified. Tr. 60-97. On October 22, 2018, Wyrock submitted objections to the VE's testimony based on a rebuttal report from a vocational rehabilitation counselor. Tr. 363-365. On December 18, 2018, the ALJ overruled Wyrock's objections and, relying on the testimony of the VE at the hearing, determined that there are jobs that exist in

significant numbers in the national economy that Wyrock can perform, i.e. she is not disabled. Tr. 27-28. Wyrock requested review of the ALJ's decision by the Appeals Council (Tr. 260-261) and, on March 26, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3.

## II. Vocational Expert Evidence

Wyrock alleges error based solely on vocational expert testimony. Therefore, the Court limits its discussion to these facts.

### A. Vocational Expert Macy's Hearing Testimony

VE Ted Macy testified at the hearing held on October 4, 2018. Tr. 89. The ALJ confirmed with Macy that Wyrock's past relevant work was as a legal secretary. Tr. 90. The ALJ asked Macy to determine whether a hypothetical individual with Wyrock's work experience could perform her past work or any other work if that person had the following limitations: was limited to work at the medium exertional level, could frequently climb ramps and stairs but never ladders, ropes, or scaffolds; must avoid all exposure to hazards (industrial machinery, unprotected heights, commercial driving, etc.); could read fine print frequently; could sustain attention for periods of two hours; could work in a setting without fast pace or strict production quotas; could respond appropriately to supervisors on a superficial and infrequent basis and have no more than occasional contact with the public; could perform work in a routine environment with infrequent changes; and could plan for one workday at a time and prioritize between two tasks at a time. Tr. 91-92. Macy responded that such an individual could not perform Wyrock's past work but could perform the following unskilled jobs that exist in significant numbers in the national economy: laundry worker, wire worker, and electronics worker. Tr. 92. Macy stated that these jobs were examples and that he could list others. Tr. 92. He stated that, other than the

2

number of jobs provided, his testimony was consistent with the DOT, explaining that the DOT does not provide job numbers and that Macy relied on his own experience and data from the Department of Labor of the Bureau of the Census when citing job numbers. Tr. 92.

The ALJ asked Macy if such an individual could perform work if that person was limited to light, rather than medium, work, and Macy stated that such an individual could perform work as a wire worker and an electronics worker, as above, and also as an electrical assembler, which existed in significant numbers in the national economy. Tr. 93. The ALJ asked whether Macy's testimony would change if either individual described above would be off-task 20% of the time and Macy stated that, based on his experience, such an individual could not perform any work. Tr. 94.

Next, Wyrock's attorney asked Macy whether his testimony would change if the individual would need to take a break every hour for ten minutes and Macy stated that, based on his experience, there would be no jobs for such an individual. Tr. 94. Wyrock's attorney asked Macy how he defines the word "infrequent" and Macy answered that he defines infrequent as equal to "one-third of the time." Tr. 94.

Wyrock's attorney confirmed with Macy that "a reasoning level 2 job has a person carry out details, but uninvolved in oral instructions" as defined in the DOT and Macy agreed that that definition would be the same definition that he would use. Tr. 94-95. Wyrock's attorney confirmed that all the jobs listed in the DOT have an SVP (specific vocational preparation time) and a reasoning level requirement and Macy agreed. Tr. 95. Wyrock's attorney stated, "according to Appendix C of the DOT and consistent with the revised handbook for analyzing jobs, it is true that the SVP refers strictly to the amount of time it takes to learn a job, correct?" Macy replied, "Well, it could be the amount of time or it could be the, you know, if an individual

has a pre-existing experience or knowledge, they can bring that with them. It may reduce the amount of time, but generally speaking, yes, it does." Tr. 95.

Finally, Wyrock's attorney asked what Macy's answer was regarding the off-task limit threshold and Macy stated that he had not given a threshold, but, in his opinion, if an individual is off-task more than ten percent of the time, there would be no jobs for that individual. Tr. 95.

### B. Wyrock's Rebuttal Report Created by Mark Heckman

On October 23, 2018, Wyrock's counsel submitted a brief challenging Macy's testimony and including a rebuttal report created by vocational rehabilitation counselor Mark Heckman. Tr. 363-365. The following is the basis for Wyrock's objection to Macy's testimony and the jobs he had identified at the hearing:

> Regarding the limitation to only occasional contact with others, according to Mr. Heckman such limitation precludes all work since jobs at SVP 1 and 2 can take up to 30 days to learn and during this time workers have more than occasional contact with supervisors and/or coworkers when they are learning the tasks and other protocols related to their new jobs.

Tr. 364. Wyrock's attorney requested that interrogatories be submitted to Macy "to resolve the issues." Tr. 364.

Heckman's report, attached to Wyrock's memorandum, recited the ALJ's RFC and the jobs that Macy identified at the hearing. Tr. 365. Heckman disagreed that such an individual described by the ALJ could perform the jobs Macy identified because, based on his experience, the training period for SVP 1 and 2 level, unskilled jobs is 30 days (as described in the DOT) and requires more than occasional interaction with supervisors. Tr. 365. He stated that the training and supervision could also be performed by coworkers. Tr. 365. As a result, Heckman stated, if a person was limited to superficial or occasional interaction with supervisors, that person "would

not survive the training/probationary period and would be unemployable in the competitive labor market." Tr. 365.

### III. Legal Standard

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Under the sequential analysis the Commissioner undertakes, the claimant has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to establish whether the claimant has the vocational factors to perform work available in the national economy. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Wyrock challenges the ALJs decision at step five; therefore, the Commissioner has the burden to establish that Wyrock has the vocational factors to perform work available in the national economy.

### IV. Analysis

Wyrock argues that the ALJ erred when he relied on VE Macy's testimony without properly addressing her post-hearing objections and Heckman's report. Doc. 16; Tr. 363-365. In

his decision, the ALJ explained that he found Heckman's report not persuasive and inconsistent with Macy's testimony, overruled Wyrock's objections, and found that Macy "clearly and appropriately interpreted the hypothetical scenarios presented at the hearing and provided corresponding jobs." Tr. 28.

At the outset, the Court notes that the same opinion contained in Heckman's report – that an RFC limiting a claimant to occasional interaction with others precludes unskilled work because the claimant would not make it past the 30-day training period – has been cropping up recently in other social security disability cases in the same manner as it has been raised in this case, i.e., submitted by the claimant after the ALJ hearing. *See, e.g., White v. Saul*, 2019 WL 4684445, at *5 (E.D. Ky. September 25, 2019) (commenting that a 2015 report created by an independently obtained vocational source named Paula Santagati which states that occasional interaction with others precludes unskilled work because the claimant would not make it past the 30-day training period has been relied on by numerous social security claimants who submit Santagati's report after the hearing to challenge the testimony of the VE at the hearing regarding the jobs that the claimant can perform); *Kidd v. Berryhill*, 2018 WL 3040894, at *6 (E.D. Ky. June 19, 2018); *Robberts v. Comm'r of Soc. Sec.*, 2019 WL 4023549, at *7-8 (S.D. Oh. Aug. 26, 2019); *Jordan v. Comm'r of Soc. Sec.*, 2019 WL 640928, at *8-9 (E.D. Mich. Jan. 28, 2019); *Cockrell v. Comm'r of Soc. Sec.*, 2020 WL 633311, at *5-6 (S.D. Oh. Feb. 11, 2020). Each of these courts has rejected the claimant's challenge to the ALJ's decision. This Court also rejects Wyrock's challenge to the ALJ's decision in this case for the reasons explained below.

First, Wyrock had an ability to cross-examine VE Macy at the hearing, did cross-examine him at the hearing, and failed to question him about Wyrock's ability to complete a 30-day training period for the jobs Macy identified. Thus, Wyrock has waived or forfeited this issue.

6

*See Kidd*, 2018 WL 3040894, at *6 (the claimant's failure to raise this same issue at the hearing when cross-examining the VE constitutes waiver or forfeiture, collecting cases). Wyrock suggests that, generally speaking, VE testimony at a hearing is "surprise testimony" because it is difficult for an attorney to be prepared for that testimony and raise an issue "in the moment." Doc. 20, pp. 4-5. Notably, Wyrock does not allege that *she* or her attorney were surprised by Macy's testimony at the hearing in this case and were therefore unable to instantly challenge his testimony. Doc. 20, pp. 4-5. In fact, the record shows that Wyrock was not surprised or unable to raise the issue "in the moment." At the hearing, Wyrock's attorney made a point to confirm with Macy that all jobs listed in the DOT have an SVP number and posited that, "according to Appendix C of the DOT and consistent with the revised handbook for analyzing jobs, … the SVP refers strictly to the amount of time it takes to learn a job[.]" Tr. 95. In other words, the attorney teed up the issue Wyrock now argues by asking Macy to confirm the basis for Macy's testimony regarding that issue. But instead of following up during the hearing by asking Macy about the amount of time it would take for the hypothetical individual described by the ALJ to learn the specific jobs identified by Macy and whether that would preclude employment, which were natural follow-up questions, Wyrock's attorney chose to remain silent and did not question the VE further on the issue. Instead, he chose to raise it by submitting VE testimony of his choice two weeks later that referenced generic limitations and SVP 1-2 level jobs. In short, the record does not support a finding that Wyrock's attorney was "surprised" by Macy's testimony; rather, the record shows that Wyrock's attorney anticipated Macy's testimony and purposefully refrained from pursuing the matter on the record at the hearing, thereby forfeiting the issue.

  Wyrock's argument also fails on the merits. When Wyrock asked Macy at the hearing whether the SVP number refers "strictly to the amount of time it takes to learn a job," Macy's

7

answer was not an unequivocal yes. Rather, Macy answered that, "generally speaking" it does, but that the individual's pre-existing experience or knowledge that she brought with her to the job also mattered. Tr. 95. Wyrock's attorney did not ask Macy his opinion about Wyrock's pre-existing experience or knowledge that she brought with her to the jobs that he identified. And, as the ALJ observed, Heckman did not attend the hearing. His report did not consider Wyrock's past relevant work or her pre-existing experience or knowledge. Macy's opinion did. Therefore, the ALJ's explanation and finding that Heckman's opinion is not persuasive (Tr. 28) is supported by the record and is not erroneous. Wyrock's argument that the ALJ provided "no rationale whatsoever regarding the rebuttal evidence" (Doc. 16, p. 9) is not accurate or persuasive. *See also Kidd*, 2018 WL 3040894, at *5 (rejecting the claimant's argument that the ALJ did not discuss the claimant's rebuttal vocational report or all the objections the attorney raised in the post-hearing memorandum; "The ALJ need not exhaustively catalog each argument to enter a proper ruling[,]" citing *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 507-508 (6th Cir. 2006); *Simons v. Barnhart*, 114 Fed. App'x 727, 733 (6th Cir. 2004); *Loral Defense Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)).

Wyrock's cited legal authority (Doc. 16, p. 7) is not on point and does not support her argument. In *Westmoreland v. Berryhill*, 2018 WL 1522118 (S.D. Oh. March 28, 2018), the court found that the ALJ erred by relying on VE hearing testimony while overruling the claimant's post-hearing objections and evidence when the claimant had challenged the fact that the VE identified jobs that were last updated by the DOT in 1977 and that the jobs were now performed very differently according to the Department of Labor's O*NET database. In *Cunningham v. Astrue*, 360 Fed. App'x 606, 614-615 (6th Cir. 2010), the claimant argued that the numbers of jobs identified by the VE at the hearing was insufficient. He had not submitted

8

post-hearing evidence. The court found that it did not have enough evidence to determine whether the ALJ's reliance upon VE testimony was proper, explaining that the descriptions for the jobs identified by the VE was outdated because the VE relied on the DOT rather than the updated O*NET. *Id*. at 615-616. And in *Nunley v. Berryhill*, 2018 WL 1167700, at *1-5 (S.D. Tx. Feb. 14, 2018), there was a lengthy and robust discussion at the hearing between the claimant's attorney, the VE, and the ALJ about where the VE was getting information for job numbers from, including a discussion about the VE's use of software called SkillTRAN; at the hearing, the attorney requested documents the VE relied on when coming up with job numbers, which the ALJ denied; and the attorney filed pre- and post-hearing briefs on the issue, which the ALJ did not address. The court found that the ALJ erred when he failed to address the claimant's post-hearing briefing on the issue of VE testimony. *Id*. at *7. The court found that the VE's reliance upon SkillTRAN, a privately created software program, was improper because it was not among the listed reliable sources in the social security regulations, and, therefore, the information was not inherently reliable. *Id*. at *8. Not even the VE could endorse the accuracy of the information she obtained from SkillTRAN. *Id*. at *9. Therefore, the ALJ had a duty to develop the record on this issue and make a finding on the reliability of SkillTRAN, which he did not do. *Id*. at *8-9. In short, all of these cases involve challenges to the source of a VE's job numbers and not to the issue in this case.[1]

Finally, the ALJ's RFC limited Wyrock to superficial and infrequent interaction with supervisors and no more than occasional interaction with the public. Tr. 21. The ALJ's RFC did not place a limitation on Wyrock's interaction with coworkers. Heckman's report stated that limiting an individual to occasional interaction with supervisors would preclude an individual

---

[1] The additional cases Wyrock cites in a footnote (Doc. 16, p. 8, n. 5), are similarly not on point.

from the 30-day training period for unskilled, SVP 2 jobs because training would require more than occasional interaction with supervisors. Tr. 365. However, Heckman also stated, "Training and supervision can also take the form also [sic] of teaming with another experienced worker and being coached by that other worker (on the job training)." Tr. 365. Thus, even if the ALJ could be said to have erred in his discussion of Heckman's report, such error would be harmless because Heckman's report concedes that training could be done by a coworker and the ALJ's RFC did not limit Wyrock's interaction with coworkers. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (harmless error analysis applies to credibility determinations). Although Wyrock asserts that the issue regarding VE testimony is its reliability, rather than credibility (Doc. 16, p. 11), case law indicates otherwise. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) ("The credibility of the vocational expert's testimony … was properly within the province of the ALJ to determine").

## V. Conclusion

For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**


IT IS SO ORDERED.


Dated: March 20, 2020

*/s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge